UNITED STATES DISTRICT COURT　　　　　　　　　　　NOT FOR PUBLICATION
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

DAVID CARTER SR.,

        Plaintiff,　　　　　　　　　　　　　　　MEMORANDUM AND ORDER

        -against-　　　　　　　　　　　　　　　　11-CV-5704 (JG) (LB)

CITY OF NEW YORK; MAYOR MICHAEL
BLOOMBERG; COMMISSIONER, NEW YORK
CITY DEPARTMENT OF CORRECTIONS AND
COMMUNITY SERVICES; COMMISSIONER,
NEW YORK CITY DEPARTMENT OF SOCIAL
SERVICES HUMAN RESOURCES
ADMINISTRATION; JOHN LUE,

        Defendants.
----------------------------------------------------------------x
----------------------------------------------------------------x

DAVID CARTER SR.,

        Plaintiff,

        -against-　　　　　　　　　　　　　　　　11-CV-5705 (JG) (LB)

GOV. ANDREW CUOMO; N.Y.S. EXECUTIVE
CLEMENCY DEPARTMENT; CHIEF
ADMINISTRATIVE JUDGE; N.Y.S. SUPREME
COURT; ANDREA M. EVANS C.E.O. NEW
YORK STATE DIVISION OF PAROLE
"EXECUTIVE DEPARTMENT",

        Defendants.
----------------------------------------------------------------x

JOHN GLEESON, United States District Judge:

        Plaintiff David Carter Sr., currently incarcerated at the George R. Vierno Center on Rikers Island, brings these two *pro se* civil rights actions pursuant to 42 U.S.C. § 1983. Carter's requests to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 are granted and the

complaints are consolidated solely for the purpose of this order. For the reasons discussed below, the complaints are dismissed for failure to state a claim upon which relief may be granted. The dismissal of the complaint in civil action 11-CV-5705 is with prejudice. In civil action 11-CV-5704, Carter is granted leave to file an amended complaint within 30 days of entry of this order, asserting claims that he was wrongfully deprived of food and naming the appropriate prison guards or other officials as defendants.

BACKGROUND

In *Carter v. City of New York*, No. 11-CV-5704 (JG) (LB) ("*Carter I*"), Carter challenges the conditions in which he and other detainees in the custody of the City of New York are incarcerated. First, he claims that detainees should be given private visits with family members and others. Specifically, he asserts that detainees at Rikers Island "should be guaranteed public relations with Girlfriends, Boyfreinds [*sic*], Wives, Husbands, Doctors, Family, etc. for a period of 72 hours at a location to be established." Compl. at 4, *Carter I*. Carter alleges that inmates in the custody of New York State are granted "private session[s] with loved ones," and so detainees in the custody of New York City should receive them too. *Id.* at 3. In addition, Carter asserts that "[a]ll inmates with children at Home be Allowed to visit their homes *every weekend* for 'Quality of life program.'" *Id.* at 4.

Second, Carter requests "that $[*190.00*] dollars be deposited through Data entry every two weeks without Delay into *all* and *every* [100%] Male/Female inmates [*sic*] accounts for commissary Buy priviledges [*sic*]." *Id.* at 6 (first and second brackets in original). He claims that inmates are entitled to these deposits because low income families cannot afford to provide money to inmates for use at prison commissaries because of their financial hardship and living expenses. *Id.* at 5–6.

2

Finally, Carter alleges that he has "been denied [his] *Human Right to eat food* provided by [the] Correction Department Deliberately on more than one occassion [*sic*]." *Id.* at 8. He alleges that, in one incident, Corrections Officers Remy and Gutierrez deprived him of food for 12 hours and then "dumped" his food. *Id.* at 9. He also alleges that Remy had "deliberately dump[ed]" food on a prior occasion. *Id.* at 11. In another incident, Corrections Officer Arias allegedly set aside the bulk of inmates' food for himself and other officers, leaving only "30 morsels" of rice per inmate. *Id.* at 15. According to Carter, he and the other inmates "starved that day." *Id.* at 16. Arias allegedly taunted the inmates regarding their lack of food and did so in retaliation for complaints made against Remy. *See id.*

In his second case, *Carter v. Cuomo*, No. 11-CV-5705 (JG) (LB) ("*Carter II*"), Carter complains about excessive sentencing. He states that:

> It is imperative at this junction to realize that harsh sentences resulting in people [male/female] spending extrodinary [*sic*] Long periods of Time from Employment, college, Family members, including offspring such as children . . . .

Compl. at 3, *Carter II* (first brackets in original). For relief, Carter asks this Court to order the release of all prisoners who have been incarcerated for six or more years. *Id.* at 7, ¶ V.

DISCUSSION

A. *Standard of Review*

Under 28 U.S.C. § 1915A, a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or employee of a governmental entity." 28 U.S.C. § 1915A(a). Upon review, a district court shall dismiss a prisoner's complaint *sua sponte* if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from

such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B)(ii); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999).

At this stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 33 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009); *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). To survive review under § 1915A, the well-pleaded allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also McGhie v. Main*, No. 11-CV-3110 (NGG) (JO), 2011 WL 4852268, at *1 (E.D.N.Y. Oct. 12, 2011) ("Section 1915A's third ground for dismissal – legal sufficiency – is identical to the dismissal standard under Federal Rule of Civil Procedure 12(b)(6).").

A court must construe a *pro se* litigant's pleadings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), especially when those pleadings allege civil rights violations, *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008). Moreover, a *pro se* complaint should not be dismissed without granting the plaintiff leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation marks and citation omitted).

B.  *Application*

In order to state a § 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.) (quoting *Pitchell v. Callan*,

4

13 F.3d 545, 547 (2d Cir. 1994)) (internal quotation marks omitted), *cert. denied*, 131 S. Ct. 158 (2010). A plaintiff must demonstrate each defendant's direct or personal involvement in the actions alleged to have caused the constitutional deprivation. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Kneitel v. Hynes*, No. 11-CV-2883 (NGG) (VVP), 2011 WL 2747668, at *2 (E.D.N.Y. July 13, 2011). The complaint must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Applying these standards, I conclude that Carter's complaints fail to state a viable claim against any of the named defendants. I will discuss each claim in turn.

    1.    *The Claimed Right to Conjugal Visits and Home Visits*

Inmates in New York have no cognizable liberty interest in conjugal visits. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *Hernandez v. Coughlin*, 18 F.3d 133, 137 (2d Cir. 1994) ("The Constitution . . . does not create any protected guarantee to conjugal visitation privileges while incarcerated."); *Gordon v. Woodbourne Correctional Facility*, 481 F. Supp. 2d 263, 271–72 (S.D.N.Y. 2007). There can similarly be no liberty interest for inmates in home visits with children. *Cf. Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460–61, 465 (1989) (restrictions on visitation privileges of inmates do not implicate a constitutionally protected liberty interest). Accordingly, there is no violation of due process from the deprivation of conjugal or home visits.

Liberally construing the complaint, Carter also appears to be claiming that the denial of conjugal visits violates the Equal Protection Clause of the Fourteenth Amendment.

Carter alleges that inmates in the custody of the *City* of New York are not allowed to have conjugal visits while inmates in the custody of the *State* of New York are.

As a general matter, it does not violate the Equal Protection Clause for persons in one city, county or other subdivision of a state to be treated differently from persons in other parts of the state. *See, e.g.*, *Salsburg v. Maryland*, 346 U.S. 545, 551 (1954) ("The Equal Protection Clause relates to equality between persons as such rather than between areas."); *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 708 (9th Cir. 1992) ("The Fourteenth Amendment's equal protection clause does not require that states treat all persons within their borders identically."); *Kail v. Rockefeller*, 275 F. Supp. 937, 942 (E.D.N.Y. 1967) ("In applying the guarantee of equal protection of the law, the Constitution does not demand that the law operate in the same manner upon all persons within the State nor does it mandate territorial uniformity." (citations omitted)) ; *see also Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 230 (1964) ("[T]here is no rule that counties, as counties, must be treated alike . . . ."); *Missouri v. Lewis*, 101 U.S. 22, 31–32 (1880). While a state may not treat different areas differently due to an impermissible motive such as race, *see Griffin*, 377 U.S. at 231 (state violated equal protection by closing public schools in one county, but not others, where decision was motivated by opposition to school desegregation), a "bare claim of differing procedures based on geographical distinctions does not state an equal protection violation." *Sommer v. Harrington*, No. 89 Civ. 6170 (PNL), 1991 WL 95431, at *2 (S.D.N.Y. May 29, 1991).

Applying these principles, courts have repeatedly held that there is no equal protection violation merely because different laws or procedures apply in different geographic areas of a state. *See, e.g.*, *Columbia River Gorge United-Protecting People & Property v.*

6

*Yeutter*, 960 F.2d 110, 115 (9th Cir. 1992) (residents of only some areas in state were allowed to vote for their land-use planners); *Rodgers v. Johnson*, No. Civ.A.04-4963, 2005 WL 758243, at *3 (E.D. Pa. Apr. 1, 2005) (Philadelphia residents required to submit their fingerprints to obtain a gun license while other Pennsylvania residents were not subject to such a requirement), *aff'd*, 174 F. App'x 3 (2006); *Slade v. Hampton Roads Reg'l Jail*, 303 F. Supp. 2d 779, 782–83 (E.D. Va. 2004) (prisoners in some local jails were charged fee that inmates in other jails and prisons were not), *aff'd*, 407 F.3d 243 (4th Cir. 2005); *Sommer*, 1991 WL 95431, at *2 (Acting Surrogates were selected from different pool of judges in New York City than in the rest of New York State); *Manes v. Goldin*, 400 F. Supp. 23, 30 (E.D.N.Y. 1975) (higher court fees for courts within New York City than in the rest of New York State), *aff'd mem.*, 423 U.S. 1068 (1976). The same result is warranted here.

There are a number of rational reasons why New York City might not allow detainees in its custody to have conjugal visits even though New York State does. Budgetary limitations, space constraints or staffing needs, for example, might warrant different rules in city prisons. Carter does not allege that the different treatment of detainees is the result of invidious discrimination on the basis of race or any other impermissible factor. Accordingly, he has failed to state an equal protection claim.

  2.  *The Funding of Commissary Accounts*

The government must provide prisoners with the basic necessities of life, such as food, clothing, shelter, and medical care. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As long as it does so, the Constitution does not require it to provide for prisoners' comfort, and certainly does not require the government to provide prisoners with spending money.

7

Accordingly, Carter has failed to state a claim that prisoners are entitled to have $190 deposited biweekly into their prison commissary accounts.

      3.     *The Deprivation of Food*

It is a violation of the Eighth Amendment's prohibition of cruel and unusual punishment to deprive prisoners of adequate food. *See Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002); *see also Helling v. McKinney*, 509 U.S. 25, 32 (1993). Prisoners must be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (internal quotation marks and citation omitted).

In addition, the Constitution forbids prison officials from retaliating against prisoners who engage in protected activity, such as complaining about their treatment. *See Espinal v. Goord*, 558 F.3d 119, 128–29 (2d Cir. 2009). To state such a claim, a prisoner must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Id.* at 128 (internal quotation marks and citations omitted).

Here, Carter has alleged that prison guards repeatedly and deliberately deprived him of a sufficient amount of food. He thus has stated an Eighth Amendment claim against those guards. In addition, he has alleged that one of the guards – Arias – deprived him of food in retaliation for complaints about another guard. Thus, he has potentially stated a First Amendment retaliation claim against Arias.

However, the guards are not named as defendants. Instead, Carter has sued the City of New York as well as the mayor and other high-ranking officials. There are no allegations

as to how any of the named defendants participated, or were even aware of, the alleged food deprivation. Nor are there allegations that the deprivation of food was part of an official policy or custom of the City. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury." (internal quotation marks and citation omitted)). Since there is no vicarious liability in § 1983 suits, the absence of such allegations is fatal to Carter's claims against these defendants. *See, e.g.*, *Iqbal*, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *Jenkins v. Morris*, No. 11-CV-4178 (SLT) (CLP), 2011 WL 3877057, at *2 (E.D.N.Y. Sept. 1, 2011).

Accordingly, Carter's claims involving the deprivation of food must be dismissed as against the named defendants. However, Carter will be granted leave to file an amended complaint, naming the appropriate guards or other prison officials who deprived him of adequate food.

    4.    *Excessive Sentencing*

Carter does not challenge any particular sentence, but instead claims that prison sentences are excessive in general. He points out that long prison sentences can have a detrimental impact on prisoners and their families and that some people have been found to have been wrongfully convicted only after spending many years in prison.

This Court cannot grant Carter the extraordinary relief he seeks – a six-year cap on all prison sentences in New York – merely because he believes that prison sentences are too harsh. Accordingly, the excessive sentencing claim must be dismissed.

CONCLUSION

For the reasons above, the complaints in *Carter I* and *Carter II* are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The dismissal in *Carter II* is with prejudice. In *Carter I*, Carter is granted leave to file an amended complaint within 30 days of the date of entry of this order. The amended complaint should bear the docket number 11-CV-5704, contain only claims regarding the wrongful deprivation of food, and name the appropriate prison guards or other officials as defendants. If Carter does not know a defendant's name, he may name the defendant as "John Doe" or "Jane Doe," but he must provide as much identifying information (for example, a physical description and/or a description of the defendant's position at the facility) as possible.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

So ordered.

John Gleeson, U.S.D.J.

Dated: January 13, 2012
      Brooklyn, New York